United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   GEORGE FINLEY,                          No. C 04-5102 MEJ
12              Plaintiff(s),
                                             **ORDER GRANTING DEFENDANTS'**
13      vs.                                  **MOTION FOR SUMMARY JUDGMENT**
14   CITY OF OAKLAND, et al.,
15              Defendant(s).
16   _____/
17
18              **I.    INTRODUCTION**
19         Plaintiff George Finley ("Plaintiff") filed a Complaint for damages against defendants City of
20   Oakland and Officer Randy White (collectively, "Defendants") arising out of his arrest for
21   trespassing on July 17, 2003.  The Complaint alleges violations of 42 U.S.C. § 1983 based on
22   unreasonable search and seizure under the Fourth Amendment, deprivations of his right to due
23   process, and excessive force.  The Complaint also alleges state law claims for assault and battery,
24   false arrest and imprisonment, intentional infliction of emotional distress, negligent infliction of
25   emotional distress, negligence, and interference with his civil rights under Civil Code Section 52.1.
26         Before the Court is Defendants' Motion for Summary Judgment, filed on November 3, 2005.
27   After careful consideration of the parties' papers, oral arguments heard at the January 19, 2006
28   hearing, relevant statutory and case law authority, and good cause appearing, the Court hereby

1    GRANTS Defendants' motion for the reasons set forth below.

2                            **II.    BACKGROUND**

3    **A.    Factual Background**

4         The evidence submitted by the parties in this action indicates the following:

5         In early 2003, defendant Randy White, a police officer for the City of Oakland Police

6    Department, was informed by his Captain about a complaint from citizens about homeless people or

7    "squatters" living inside of a house with possible drug activity and stealing of electricity.  On July

8    14, 2003, he responded to the property to investigate the complaint.  Decl. of Randy White

9    submitted as Defendants' Submitted Evidence ("DSE"), Tab D, Ex. 2 at 7:2-6, 8:9-13, 10:7-11; Ex.

10   1.  The subject property was a five unit building located at 2200 E.17th Street, Oakland, California

11   ("subject property").  Joint Statement of Undisputed Facts ("Joint Statement"), DSE Tab M at 1:24-

12   26.

13        The subject property had been owned by Mack Brown, who died some time in 2002.  *Id.* at

14   ¶2.  By early January 2003, all water service to the subject property had been shut off by East Bay

15   Municipal Utility District and it remained shut off through at least July 18, 2003.  *Id.* at ¶3.  On or

16   about January 8, 2003, there was no electrical service to Unit Number 2 at the subject property, and

17   electrical was being provided by an extension cord from Unit Number 1.  *Id.* at ¶4.

18        On or about April 17, 2003, Warren Brown, the son of Mack Brown, had been appointed by

19   the Alameda County Superior Court as the administrator of the estate of the deceased Mack Brown,

20   which included the subject property.  *Id.* at ¶5.  On that same day, the City of Oakland's Code

21   Enforcement Department declared the property a public nuisance and revoked its Certificate of

22   Occupancy.  The Certificate of Occupancy had not been restored by July 17, 2003, and had not been

23   restored as of October 31, 2005.  Warren Brown received notice of the City's action.  DSE Tab I at

24   ¶4; DSE Tab G at ¶5; DSE Tab H at ¶7; DSE Tab F at ¶4.

25        In May or June of 2003, Warren Brown personally told Plaintiff that he must leave the

26   property because it had been declared a substandard building.  DSE Tab F at ¶4.  Also in May of

27   2003, Plaintiff spoke to someone from the City Building Department about the condition of the

28                                    2

1   property and observed the posting of notices to vacate the property on the premises.  DSE Tab M at

2   ¶10.

3        When Officer White arrived at the property on July 14, he noticed that it was boarded up as

4   if it was a vacated property and it had extension cords leading to the inside of the unit.  DSE Tab D,

5   Ex. 2 at 10:14-18; 14:13-22.  Officer Edgardo Ayala went to the property with him.  *Id.* at 14:1-5.

6   Officer White contacted Plaintiff, who was occupying Unit Number 2 of the property.  DSE Tab M

7   at ¶1.  Plaintiff was unable to produce any utility bills or a rental agreement to show he had a

8   tenancy at the property; instead, he showed Officer White two receipts for $100 from nine months

9   earlier.  DSE Tab M at ¶6.

10       Officer White states that at that point he did not know whether Plaintiff was legally living at

11  the subject property or trespassing.  DSE Tab D, Ex. 2 at 22:17-25.  Officer White then contacted

12  the City Code Compliance Department to find out who owned the building and whether there were

13  any violations associated with the property.  *Id.* at 11:4-13.  According to Officer White, the person

14  he spoke to gave him Warren Brown's telephone number as the owner of the property and informed

15  him that the City of Oakland had boarded up the property about a year earlier.  *Id.* at 10:21-24;

16  11:10-20; 26:24-25.

17       On or about July 15, 2003, Officer White contacted Warren Brown and spoke to him

18  regarding Plaintiff's presence in the apartment complex.  Warren Brown told him that that anyone on

19  the premises was a trespasser, including Plaintiff.  DSE Tab F at ¶5.  Mr. Brown states that he never

20  told Officer White that Plaintiff was a tenant.  *Id.*  Officer White then faxed Mr. Brown the standard

21  form the police department sends to absentee property owners on which they can say that anybody

22  caught on the property they want arrested.  DSE Tab D, Ex. 2 at 26:3-17.  On July 15, Mr. Brown

23  faxed the form back asking that the Oakland Police Department arrest anyone still present at the

24  subject property as a trespasser.  DSE Tab F at ¶6; Ex. 3.

25       That same day, Officer White went back to the property with Officer Ayala.  Officer White

26  states that Plaintiff refused to leave, claiming he was a tenant.  DSE Tab D, Ex. 2 at 28:5-9.  Officer

27  White then told Plaintiff that he had to leave and gave him two days to vacate the subject property or

28

3

he would be arrested. *Id.* at 58:10-23. Officer White states that he made this decision based on his investigation, including that Plaintiff had no legal electricity, no water and no rental agreement, and no right to be there according to the owner. *Id.* at pp. 8-24.

On July 17, 2003, Officer White returned to the subject property with Officer Ayala and Sergeant Bernard, and informed Plaintiff that he would be arrested if he did not leave at that moment. *Id.* at 29:5-14. Officer White then arrested Plaintiff for trespassing in violation of California Penal Code Section 602. DSE Tab M at ¶7. He placed Plaintiff in handcuffs and put him in the back of his police car. *Id.* at ¶8. Officers White and Ayala state that no physical force was used against Plaintiff by any police officer during the arrest and Plaintiff sustained no physical injuries during the arrest. DSE Tab D at ¶4; Tab E at ¶4. Plaintiff was booked into the City jail at 2:15 p.m. and cited and released at 6:45 p.m. on the same day. DSE Tab D, Ex. 1.

After the arrest, Officer White states that Warren Brown's attorney informed him that he was going to file an unlawful detainer action against Plaintiff and wanted to get him served to make sure he could not go back to the subject property. DSE Tab D, Ex. 2 at 37:9-38:8. Officer White informed Mr. Brown and his attorney that he had already arrested Plaintiff, so they might as well go down to the jail to serve him. *Id.*

**B.    Procedural Background**

On October 6, 2004, Plaintiff filed a Complaint for Damages in the Alameda County Superior Court. On December 2, 2004, Defendants removed the matter to this Court.

On November 3, 2005, Defendants filed their Motion for Summary Judgment, as well as Defendants' Index of Evidence in Support of Defendants' Motion for Summary Judgment.

On November 23, 2005, Defendants filed the Declaration of Kandis A. Westmore in Lieu of Reply in Support of Motion for Summary Judgment. In her declaration, Ms. Westmore, counsel for Defendants, states that the due date for Plaintiff's opposition had passed and requests that the Court consider Defendants' motion unopposed.

On November 29, 2005, Richard Meier, counsel for Plaintiff, filed a declaration stating that he is unfamiliar with the Federal Rules of Civil Procedure and was unaware that the federal rules

4

1   and the Civil Local Rules established a briefing schedule for motion practice before this Court.  Mr.

2   Meier also requested a continuance to allow time for Plaintiff to file an opposition.

3        On December 5, 2005, Defendants filed an opposition to Mr. Meier's request in which they

4   directed the Court's attention to the fact that Mr. Meier has appeared in this district at least since

5   1990 and had failed to timely file an opposition in at least one other matter before this Court,

6   *Gebrewmeskel v. Regata Holdings, Inc., et al.*, C-04-1126 MMC.  Based on Defendants' opposition,

7   the Court ordered Mr. Meier to file a declaration responding to their arguments against a

8   continuance.

9        On December 7, 2005, Mr. Meier filed a declaration in response to the Court's order.  Based

10  on Mr. Meier's declaration, the Court continued the summary judgment hearing to January 19, 2006,

11  and permitted the parties to file an opposition and reply prior to the hearing.  The Court also warned

12  Mr. Meier that he is required to comply with the Local Rules of this Court and that sanctions will be

13  imposed for any future unfamiliarity that Mr. Meier claims.

14       On December 15, 2005, Plaintiff filed his Opposition to Defendants' summary judgment

15  motion, as well as the Declaration of Richard Meier in support thereof, Plaintiff's Index of Evidence

16  in Support of Opposition, and Separate Statement of Disputed Facts.

17       On January 5, 2006, Defendants filed a Reply in support of their motion, as well as a Request

18  for Judicial Notice in Support of Reply, and Objections to Plaintiff's Evidence in Support of

19  Opposition.

20       On January 19, 2006, the Court held a hearing on the matter.  Richard Meier appeared on

21  behalf of Plaintiff.  Pelayo Llamas, Jr. and Kandis Westmore appeared on behalf of Defendants.

22                              **III.   DISCUSSION**

23       In their motion for summary judgment, Defendants argue that Plaintiff has conducted no

24  discovery in this case and has only his own speculation to offer in support of his claims.  Defendants

25  contend that the undisputed evidence demonstrates no triable issue of material fact as to any of the

26  alleged causes of action and they are entitled to judgment as to each claim.

27  **A.      Defendants' Request for Judicial Notice**

28                                      5

United States District Court

For the Northern District of California

1    As a preliminary matter, Defendants request the Court to take judicial notice of certain

2    matters of public record, specifically Oakland Municipal Code Sections 1.08, et. seq.; 15.08 et. seq.;

3    and 1.28 et. seq.  Good cause appearing, the Court hereby GRANTS Defendants' request.

4    **B.      Summary Judgment Standard**

5    Summary judgment is proper when the pleadings, discovery, and affidavits "show that there

6    is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

7    matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary

8    basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is

9    "material" only if it could affect the outcome of the suit under governing law.  *Anderson v. Liberty*

10   *Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In deciding whether to grant summary judgment, the

11   court may not weigh the evidence.  *Id.* at 255.  Rather, the nonmoving party's evidence must be

12   believed and "all justifiable inferences are to be drawn in [the nonmovant's] favor."  *United*

13   *Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing

14   *Liberty Lobby*, 477 U.S. at 255).  However, in determining whether to grant or deny summary

15   judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact."

16   *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Rather, a court is entitled to rely on the

17   nonmoving party to identify with reasonable particularity the evidence that precludes summary

18   judgment.  *Id.*

19   The moving party bears the initial responsibility of informing the court of the basis for its

20   motion and identifying those portions of the pleadings, discovery, and affidavits that it believes

21   demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

22   323 (1986).  On an issue for which the opposing party will have the burden of proof at trial, the

23   moving party need only point out "that there is an absence of evidence to support the nonmoving

24   party's case."  *Id.* at 325.

25   A party opposing a properly supported motion for summary judgment "may not rest upon the

26   mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing

27   that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 248.

28

United States District Court

For the Northern District of California

When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. *United States v. 1 Parcel of Real Prop.*, 904 F.2d 487, 492 n.3 (9th Cir. 1990) (citing *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978)). However, the opposing party need not produce evidence in a form that would be admissible at trial in order to avoid a summary judgment. *Celotex*, 477 U.S. at 324. Nor must the opposing party show that the issue will be resolved conclusively in its favor. *Liberty Lobby*, 477 U.S. at 248-49. All that is necessary is sufficient evidence supporting the asserted factual dispute and requiring a jury or judge to resolve the parties' differing versions of the truth at trial. *Id.* at 249.

**C.      Plaintiff's Claims Under 42 U.S.C. § 1983**

As Plaintiff's Complaint alleges causes of action under Federal and California state law, the Court shall first consider his Federal law claims under 42 U.S.C. § 1983. The Complaint alleges violations based on unreasonable search and seizure under the Fourth Amendment, deprivations of his right to due process, and excessive force.

Title 42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

1.      Unreasonable search and seizure under the Fourth Amendment

Plaintiff seeks to recover damages from Officer White under 42 U.S.C. § 1983 for his alleged false arrest and false imprisonment on July 17, 2003. In their motion, Defendants argue that Officer White had probable cause to arrest Plaintiff and therefore did not violate the Fourth Amendment.

The Fourth Amendment to the United States Constitution protects persons against

7

"unreasonable searches and seizures." U.S. Const. amend. IV. In order for an arrest to satisfy the requirements of the Fourth Amendment, the "reasonableness" of the arrest is determined by the existence of probable cause. *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). Probable cause exists when facts and circumstances known to the arresting officer are sufficient to warrant a prudent person to believe that the person arrested has committed an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Barry*, 902 F.2d at 773.

Here, at the time of Plaintiff's arrest on July 17, 2003, Officer White had completed his investigation into the matter. Based on this information, Officer White concluded that Plaintiff was trespassing and arrested him for violation of California Penal Code Section 602(l)(1). DSE Tab D, Ex. 1. Section 602 provides, in pertinent, as follows:

> Entering any lands under cultivation or enclosed by fence, belonging to, or occupied by, another, or entering upon uncultivated or unenclosed lands where signs forbidding trespass are displayed at intervals not less than three to the mile along all exterior boundaries and at all roads and trails entering the lands without the written permission of the owner of the land, the owner's agent or of the person in lawful possession, and
>
> (1) Refusing or failing to leave the lands immediately upon being requested by the owner of the land, the owner's agent or by the person in lawful possession to leave the lands...

Cal. Penal Code § 602(l)(1).

Based on the undisputed evidence before it, the Court finds that Officer White had probable cause to arrest Plaintiff. It is undisputed that Officer White responded to the property initially to investigate a complaint about "squatters" living inside the subject property with possible drug activity. Officer White contacted Plaintiff, who told him he was living there and had been living there for a year. Plaintiff was unable to provide a rental agreement or PG&E bills or statements to show he had a tenancy at the subject property; instead, he showed Officer White two receipts for $100.00 from nine months earlier.

Officer White did not arrest Plaintiff at this time, but instead conducted a thorough investigation. Prior to arresting Plaintiff, Officer White had the following information based on his own observations and confirmation from third parties: (1) the subject property had been declared

United States District Court

For the Northern District of California

1    substandard, ordered vacated by the City, and the Certificate of Occupancy was revoked on April

2    17, 2003 and has not been restored (DSE Tab I at 2:8-12, Ex. 1; Tab H at 2:17-21); (2) Plaintiff was

3    not a tenant and had never been one according to the property owner (DSE Tab D, Ex. 2 at 23:1-17):

4    (3) according to a PG&E representative, the electrical service to the building was being illegally

5    tapped from PG&E lines (DSE Tab D, Ex. 2 at 48:16-25; DSE Tab E at 2:1-5); (4) there was no

6    water service on the property (DSE Tab M at ¶3); and (5) the property did not appear to be fit for

7    human habitation (DSE Tab D, Ex. 2 at 49:23-50:3).  Thus, the Court finds that a reasonably prudent

8    officer faced with the same verified information obtained by Officer White could believe that

9    Plaintiff had committed offenses under California Penal Code Section 602.

10         Plaintiff argues that at the time of his arrest, Officer White knew he had a tenancy or lease to

11   occupy the subject property and that Warren Brown intended to file an unlawful detainer action.

12   However, the evidence before the Court shows that Plaintiff was unable to produce any utility bills

13   or a rental agreement to show he had a tenancy at the property; instead, he showed Officer White

14   two receipts for $100 from nine months earlier.  The evidence also shows that Officer White did not

15   find out about Mr. Brown's plans until after Plaintiff's arrest.  Plaintiff fails to provide any evidence,

16   other than hearsay and speculation, to support this argument.  Plaintiff further argues that Officer

17   White had no reason to believe the representations by Warren Brown, contending that Officer White

18   knew the property was going to be sold before making the arrest.  Again, Plaintiff fails to provide

19   any admissible evidence to substantiate this claim.  Thus, probable cause existed to arrest Plaintiff

20   and Officer White did not violate the Fourth Amendment in arresting him.

21         The Court also finds that Officer White had cause to detain and arrest Plaintiff for

22   committing several public offenses in his presence.  Officers can arrest persons who commit a public

23   offense in their presence.  Cal. Penal Code § 836(a)(1).  Officer White confirmed with a PG&E

24   representative that Plaintiff's electrical hookup was illegal.  He also saw Plaintiff occupying a

25   property that had been ordered vacated by the City of Oakland in violation of Oakland Municipal

26   Code Section 15.08.380, which provides that once a building has been ordered vacated, it may not

27   be occupied for any reason until the violations causing the substandard conditions have been

28
                                           9

1  corrected.  Under Oakland Municipal Code Section 1.28.010, violations of the code are

2  misdemeanors.  Officer White also had a written statement from the owner of the subject property

3  indicating that Plaintiff was not a tenant and should be arrested for trespassing.

4      Because the undisputed evidence in this case demonstrates that at the time of Plaintiff's

5  arrest, Officer White acted reasonably, based on the information available to him, Plaintiff cannot

6  prevail on his Fourth Amendment claim of unreasonable search and seizure.  Accordingly, the Court

7  hereby GRANTS Defendants' motion as to this claim.

8          2.    Excessive force

9      Next, the Court shall consider Plaintiff's excessive force claim.  Plaintiff's Complaint alleges

10  excessive force under the Fourth, Fifth, and Fourteenth Amendments.  As a preliminary matter,

11  Plaintiff cannot bring excessive force claims under the Fifth and Fourteenth Amendments.  "The

12  Due Process Clause of the Fifth Amendment and the equal protection component thereof apply only

13  to actions of the federal government - - not to those of state or local governments."  *Lee v. City of*

14  *Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227

15  (1981)).  Because Plaintiff's case does not involve the federal government and does not allege that

16  any defendant is a federal actor, the Court GRANTS Defendants' motion with respect to Plaintiff's

17  Fifth Amendment excessive force claim.

18      Plaintiff's Fourteenth Amendment claim must also fail.  When an explicit textual provision of

19  the federal constitution protects against a challenged government action, the claim must be analyzed

20  under that specific provision alone and not under the more general guarantee of substantive due

21  process.  *Armendariz v. Penman*, 75 F.3d 1311, 1322 (9th Cir. 1996); *Macri v. King County*, 110

22  F.3d 1496, 1499 (9th Cir. 1997).  In addressing an excessive force claim brought under Section

23  1983, analysis begins by isolating the precise constitutional violation with which the defendant is

24  charged.  *Graham*, 490 U.S. at 394.  "The validity of the claim must then be judged by reference to

25  the specific constitutional standard which governs that right, rather than to some generalized

26  'excessive force' standard."  *Id.*  Where an excessive force claim arises in the context of an arrest or

27  investigatory stop, it most often invokes the protection of the Fourth Amendment.  *Id.*  Because that

28                                              10

United States District Court

For the Northern District of California

is the context here, the Court GRANTS Defendants' motion with respect to Plaintiff's Fourteenth

Amendment excessive force claim and shall evaluate the merits of Plaintiff's claim pursuant to the

Fourth Amendment.

Under the Fourth Amendment, officers may use only such force as is objectively reasonable under the circumstances. *Id.* at 397.  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  In evaluating the nature and quality of the intrusion, courts must consider "the type and amount of force inflicted," *Jackson v. City of Bremerton*, 268 F.3d 646, 651-52 (9th Cir. 2001), and allow "for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

In his responses to Defendants' discovery requests, the only injuries that Plaintiff identified that he attributes to the incident are that he was denied his civil liberties when he was arrested and confined, and that due to that arrest and confinement he suffered extreme emotional distress and had to retain an attorney to defend him.  DSE Tab K at Response No. 6.  The Court is unable to find any mention in his responses of excessive force being used by any officer.  Indeed, Plaintiff sought no treatment for any of his alleged injuries, including the emotional injuries he claims to have sustained.  Further, there is no indication that Plaintiff resisted arrest, as he was handcuffed and put in the back seat of the patrol car without incident.

Based on this analysis, the Court finds that Plaintiff cannot maintain an excessive force claim and hereby GRANTS Defendants' motion on this claim.

3.    Due process

a.    substantive due process

Plaintiff also brings due process claims under the Fifth and Fourteenth Amendments.  As discussed above, the Fifth Amendment applies only to actions taken by the federal government.

11

United States District Court

For the Northern District of California

1    Moreover, Plaintiff may not rely on substantive due process where the more specific provisions of

2    the Fourth Amendment apply.  *Graham*, 490 U.S. at 386.  Because Plaintiff claims he was

3    unlawfully arrested by means of excessive force intentionally applied in violation of the Fourth

4    Amendment, he cannot simultaneously seek damages for injuries related to the same conduct under

5    the Fourteenth Amendment.  However, because there is no evidence to support Plaintiff's excessive

6    force claim, the Court shall consider whether he may pursue in the alternative a Fourteenth

7    Amendment substantive due process claim, based on his liberty interest in personal security.

8         The Due Process Clause of the Fourteenth Amendment protects individuals against

9    governmental deprivations of "life, liberty, or property" without due process of law.  *Board of*

10   *Regents v. Roth*, 408 U.S. 564, 570-71 (1972).  The touchstone of due process is protection of the

11   individual against arbitrary action of government, whether the fault lies in a denial of fundamental

12   procedural fairness (i.e., denial of procedural due process guarantees) or in the exercise of power

13   without any justification in the service of a legitimate governmental objective (i.e., denial of

14   substantive due process guarantees).  *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).

15        Only the most egregious action, one which "shocks the conscience," is said to be "arbitrary"

16   in the constitutional sense.  *Id.* at 834.  Therefore, an important factor in determining whether

17   behavior is egregious and shocks the conscience is whether the state actors acted with a purpose to

18   harm unrelated to the legitimate goal of protecting the public and themselves.  *Moreland v. Las*

19   *Vegas Metro. Police Dept.*, 159 F.3d 365, 372-73 (9th Cir. 1998).

20        Here, the Court finds that Officer White did not act with a purpose to harm Plaintiff

21   unrelated to the legitimate goal of arresting a trespasser pursuant to California Penal Code Section

22   602.  Placing Plaintiff in handcuffs without resistance and putting him in the back of the police car

23   does not reach the level of egregious action that shocks the conscience, and Plaintiff has presented

24   no other evidence of the alleged egregious actions of Officer White.  Further, Officer White was

25   justified in removing Plaintiff from the subject property because it had been declared a public

26   nuisance and unsafe to occupy by the Oakland Building Department.  Accordingly, the Court

27   GRANTS Defendants' motion with respect to Plaintiff's Fifth Amendment and Fourteenth

28                                          12

1   Amendment substantive due process claims.

2             *b. procedural due process*

3          Plaintiff also appears to bring a procedural due process claim, arguing that he was deprived

4   of his tenancy rights without due process.  However, a threshold requirement for a procedural due

5   process claim is the showing of a liberty or property interest protected by the Constitution.

6   *Wedges/Ledges of Cal, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (citing *Roth*, 408 U.S.

7   at 569.  A protected property interest is present where an individual has a reasonable expectation of

8   entitlement deriving from "existing rules or understandings that stem from an independent source

9   such as state law." *Id.* (citing *Roth*, 408 U.S. at 577).  Thus, Plaintiff is required to prove that

10  Defendants deprived him of a liberty or property interest without affording him sufficient notice or

11  an opportunity to be heard.  *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976).

12         Here, any right Plaintiff may have had to occupy the property became void as of April 17,

13  2003, when the City declared the property substandard and revoked its certificate of occupancy.

14  Plaintiff admits that he spoke to a representative from the City's Code Compliance Department and

15  observed the inspector posting the notice to vacate in May of 2003, but he ignored it.  DSE Tab D,

16  Ex. 2 at 56:21-59:2, Tab M at ¶10.  Plaintiff further admits that all other tenants except him

17  voluntarily vacated the property.  Opp'n. at 2:23-27.  Each day Plaintiff ignored the order to vacate,

18  he committed a misdemeanor.  Oakland Mun. Code Sections 1.28.010 and 15.08.110.  Thus, at the

19  time of his arrest, Plaintiff did not have a constitutionally protected right to occupy the property and

20  there can be no constitutional due process violation.

21         Plaintiff argues that the fact that the subject property was uninhabitable and deemed a

22  nuisance does not negate or supercede his rights as a tenant; however, he cites no legal authority for

23  this argument and presents no evidence to show that his disregard for the City's order to vacate was

24  not a misdemeanor.  Plaintiff further argues that the Oakland Municipal Code does not award

25  landlords for creating and/or maintaining uninhabitable conditions, but this argument cannot alter

26  the Court's decision because the landlord is not a party to this lawsuit.  Therefore, the Court hereby

27  GRANTS Defendants' motion with respect to Plaintiff's procedural due process claims.

28                                        13

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1    4.    Qualified immunity

2        Even if the Court were to find in Plaintiff's favor on any of his Section 1983 claims,

3    Defendants claim that Officer White is entitled to judgment on the grounds of qualified immunity.

4    The defense of qualified immunity protects government officials from liability for civil damages

5    when they are performing discretionary functions "insofar as their conduct does not violate clearly

6    established statutory or constitutional rights of which a reasonable person would have known."

7    *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When considering a claim of qualified immunity,

8    the threshold question must be: Taken in the light most favorable to the party asserting the injury, do

9    the facts alleged show the officer's conduct violated a constitutional right?  *Saucier v. Katz*, 533 U.S.

10   194, 201 (2001).  However, "[o]fficers are entitled to qualified immunity even if they acted

11   unconstitutionally, as long as a reasonable officer could have believed the conduct lawful."

12   *Alexander v. County of Los Angeles*, 64 F.3d 1315, 1322 (9th Cir. 1995).  Thus, even if Plaintiff was

13   mistakenly arrested by Officer White, so long as a reasonable officer could have believed his

14   conduct lawful, Officer White is entitled to qualified immunity.  *Id.*

15       The first inquiry in the qualified immunity defense is whether the facts alleged indicate that

16   the officer's conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201.  If no right would have

17   been violated on the facts alleged, there is no need for further inquiry into immunity.  *Id.*  If a

18   constitutional violation could be established, courts next inquire "whether the right was clearly

19   established in the specific context of the case, rather than as a broad general proposition."  *Id.*  The

20   dispositive inquiry, in determining whether a right is clearly established, is "whether it would be

21   clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.*

22       Here, a reasonable officer  receiving the information that Officer White received could have

23   found that Plaintiff was a trespasser.  Officer White confirmed with a PG&E representative that

24   Plaintiff's electrical hookup was illegal, knew that the subject property had been ordered vacated,

25   and had a written statement from the owner of the subject property indicating that Plaintiff was not a

26   tenant and should be arrested for trespassing.  Thus, Officer White's conduct did not violate a

27   constitutional right.  However, as did the Supreme Court in *Saucier*, the Court here shall assume the

28
                                                14

1   existence of a constitutional violation for purposes of qualified immunity analysis based on the

2   general prohibition against the use of excessive force.  *Id.* at 201.

3        Next, the Court must inquire whether this general prohibition against excessive force was

4   "the source for clearly established law that was contravened in the circumstances this officer faced."

5   *Id.*  In so doing, the Supreme Court focused on what the officer reasonably understood his powers

6   and responsibilities to be when he acted.  *Id.* at 202.  Applying this rationale, the Supreme Court

7   found that the officer's actions were reasonable under the circumstances and that there was no

8   clearly established rule that would prohibit the officer from using the force that he did to effect the

9   arrest and that the officer was therefore entitled to qualified immunity.  *Id.*

10       Here, the Court finds that Officer White, based on his investigation, reasonably understood

11  that Plaintiff was a trespasser and understood his responsibility to arrest Plaintiff as a trespasser.

12  Accordingly, the Court finds that a reasonable officer could have found Officer White's conduct to

13  be lawful and he is entitled to the defense of qualified immunity.

14       5.    Section 1983 claims against defendant City of Oakland

15       Plaintiff also brings the same Section 1983 claims against defendant City of Oakland.  To

16  prevail on a Section 1983 claim against a municipality, a plaintiff must show "(1) that he possessed a

17  constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this

18  policy amount[ed] to deliberated indifference to the plaintiff's constitutional right; and (4) that the

19  policy [was] the moving force behind the constitutional violation."  *Oviatt v. Pierce*, 954 F.2d 1470,

20  1474 (9th Cir. 1992).  Here, the Court has summarily adjudicated Plaintiff's constitutional claims in

21  favor of Officer White.  Because he brings the same claims against the City of Oakland, there can be

22  no constitutional violation.  *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994).

23       Plaintiff also argues that Officer White's alleged deficient investigation might be the result of

24  a policy or a failure to properly train.  A plaintiff may prove that there is an "official policy"

25  sufficient to impose municipal liability under Section 1983 in several ways.  First, a plaintiff can

26  identify the "edicts or acts" of an official policy maker charged with authority over the specific area

27  in which the policy is applicable.  *Monell v. New York Department of Social Services*, 436 U.S. 658,

28

15

United States District Court

For the Northern District of California

694 (1978).  Second, a plaintiff may show that an official policy maker ratified the policy announced by a subordinate employee, and the reasons for that policy.  *City of St. Louis v. Praprotnick*, 485 U.S. 112, 127 (1988).  Third, a plaintiff may demonstrate that a custom, practice or usage exists within a municipality that is so persistent and widespread as to be deemed an official policy, even when those customs or practices deviate from the written or otherwise officially articulated policies of the public entity.  *Monell*, 436 U.S. at 690-91 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

Here, Plaintiff presents no evidence that Officer White's allegedly deficient investigation is the result of a policy or failure to properly train.  Even if Officer White's actions were improper, Plaintiff has presented no evidence beyond the incident itself.  A municipality may be liable for the unconstitutional conduct of police officers in the absence of an official policy only if a plaintiff offers proof of "the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal violators were not discharged or reprimanded."  *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995).  Proof of "random acts or isolated events is insufficient to establish custom."  *Id.*  Thus, Plaintiff's conclusory argument that there is a triable issue as to whether Officer White's alleged failure was a custom or the result of inadequate training without setting forth any facts in support of such an argument is insufficient to prove *Monell* liability as a matter of law.  Accordingly, the Court hereby GRANTS Defendants' motion with respect to Plaintiff's Section 1983 claims against the City of Oakland.

6.   Conspiracy theory

Although not listed in his Complaint as a separate cause of action, Plaintiff appears to allege that all previously mentioned constitutional violations were the result of a conspiracy that existed to remove Plaintiff from the subject property to allow a sale to go through.  Opp'n. at 11:7-10.  However, the Court has summarily adjudicated Plaintiff's constitutional claims in favor of Officer White and "[t]he absence of a §1983 deprivation of rights precludes a . . . conspiracy claim predicated on the same allegations."  *Caldeira v. County of Kauai*, 866 F.2d 1175, 1181-82 (9th Cir. 1989).

16

United States District Court

For the Northern District of California

1    Moreover, to support the claim that Defendants have engaged in a conspiracy against him,

2    Plaintiff must allege facts showing "a combination of two or more persons acting in concert to

3    commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of

4    which is an agreement between the parties to inflict a wrong against or injury upon another."

5    *Burgess v. Burgess*, 1993 WL 149995 at *2 (N.D. Cal. 1993) (quoting *Hampton v. Hanrahan*, 600

6    F.2d 600, 620-24 (7th Cir. 1979), overruled on other grounds, 446 U.S. 754 (1979)).  In addition,

7    Plaintiff must plead facts showing "particularly what acts a defendant performed to carry the

8    conspiracy into effect, how those acts fit into the conspiracy, and how the injury to the plaintiff was

9    foreseeable therefrom." *Id.* (quoting *Watson v. Clark*, 716 F. Supp. 1354, 1358 (D. Nev.1989)).

10    Here, there are no facts alleged that show an agreement between two or more persons or any

11    act in furtherance of a conspiracy.  Plaintiff's basis for his conspiracy allegation is his speculation

12    about the contents of conversations between Officer White and Warren Brown.  However, Officer

13    White's sworn testimony is that he was never told that Plaintiff was a tenant until after the arrest, and

14    Warren Brown's sworn testimony is that he never told Officer White that Plaintiff was a tenant.  The

15    only information Officer White had regarding Plaintiff's status was that he was a trespasser as

16    indicated in the written statement faxed to him by Warren Brown.  Moreover, Plaintiff has cited no

17    authority in support of his claim that when Officer White became aware of the unlawful detainer

18    action after Plaintiff was in jail, he should have known that Plaintiff had a valid tenancy or right to

19    occupy that property that rendered the arrest improper.  Thus, the Court finds that Plaintiff's

20    conspiracy allegations are merely conclusory statements and are insufficient to state a claim for

21    which relief can be granted.  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.

22    1982).  Therefore, the Court GRANTS summary judgment in favor of Defendants on Plaintiff's

23    conspiracy claim.

24    **D.    Plaintiff's State Law Claims**

25    Plaintiff's Complaint also alleges state law claims for assault and battery, false arrest and

26    imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress,

27    negligence, and interference with his civil rights under Civil Code Section 52.1.  Defendants argue

28

17

that all these claims must be dismissed because Plaintiff has failed to identify a statutory basis for his state law claims.

### 1.   Municipal liability

In their motion, Defendants argue that Plaintiff's state law causes of action fail to allege any specific statutory basis for municipal liability as required under California Government Code Section 815.  Section 815, which is part of the California Tort Claims Act, provides: "A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov't Code § 815(a).  The intent of the California Tort Claims Act is "not to expand the rights of the plaintiffs in suits against the government entities, but to confine potential government liability to rigidly delineated circumstances[.]"  *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1127 (2002).  In *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175, 1182 (2003), the California Supreme Court determined that direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care.

California Government Code Section 815.6, which provides the basis for liability of public entities for failing to properly exercise a duty, states that only if a public entity is under a mandatory duty "imposed by an enactment" may that entity be held liable for breach of that duty.  Cal. Gov't Code § 815.6.  In this context, "enactment" means "a constitutional provision, statute, charter provision, ordinance, or regulation."  Cal. Gov't Code § 810.6.  Thus, in order to state a claim against a public entity, plaintiffs must "specifically allege the applicable statute or regulation" giving rise to a mandatory duty on the part of the moving defendants, the violation of which was a proximate cause of their claimed injuries.  *Brenneman v. State of California*, 208 Cal. App. 3d 812, 817 (1989).

Although Defendants argue that Section 815 applies to both public entities and public employees, the statute refers only to public entities.  Further, it is unclear whether Section 815 would apply to all Plaintiff's state law claims against Officer White and the City of Oakland. Regardless, the Court need not settle these issues as, based on the discussion below, Plaintiff's state

1   law claims do not survive on the merits.

2          2.      <u>False arrest/false imprisonment</u>

3          False arrest and false imprisonment are not separate torts; rather, false arrest is one way to

4   commit a false imprisonment. *Irvine v. City & County of San Francisco*, 2001 WL 967524 at *8

5   (N.D. Cal. 2001) (citing 5 Bernard Witkin, Summary of California Law § 378 (9th ed. 1988)).

6   Under California law, false imprisonment is the "nonconsensual, intentional confinement of a

7   person, without lawful privilege, for an appreciable length of time, however short." *Rhoden v.*

8   *United States*, 55 F.3d 428, 430 (9th Cir. 1995).  If a plaintiff proves the elements of the tort, the

9   defendant has the burden of establishing that the detention was legally justified.  *Id.*

10          Here, even accepting that Officer White imprisoned Plaintiff, the Court cannot find that he

11   did so without lawful privilege.  As discussed above, Officer White conducted a thorough

12   investigation prior to arresting Plaintiff and concluded that he was a trespasser.  Further, Officer

13   White is not liable because he made a citizen's arrest for Warren Brown under California Penal Code

14   section 837.  Penal Code section 847 provides immunity to peace officers in these circumstances.  A

15   police officer cannot be civilly liable for false arrest as a result of taking custody of a person at the

16   request of a citizen making an arrest.  *Kinney v. County of Contra Costa*, 8 Cal. App. 3d 761, 769

17   (1970); Cal. Penal Code § 847 (West 1985 & Supp. 2001).

18          Alternatively, even if Defendants no duty to arrest pursuant to a citizen's arrest, they would

19   be protected from liability by discretionary act immunity for injuries resulting from discretionary

20   actions.  "A public employee is not liable for an injury resulting from his act or omission where the

21   act or omission was the result of the exercise of the discretion vested in him, whether or not such

22   discretion be abused." Cal. Gov't Code § 820.2.  The decision to arrest is an exercise of discretion

23   for which a police officer may not be liable in tort. *McCarthy v. Frost*, 33 Cal. App. 3d 872, 875

24   (1973).

25          Based on this analysis, the Court finds that Plaintiff has failed to raise a triable issue of fact

26   with respect to his false arrest/false imprisonment claim. Alternatively, Defendants are protected by

27   discretionary act immunity.  Accordingly, the Court hereby GRANTS summary judgment on

28                                                    19

United States District Court

For the Northern District of California

1    Plaintiff's false arrest and false imprisonment claims.

2        3.    <u>Assault and battery</u>

3        Assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on

4    another.  Cal. Penal Code § 240.  The essence of the intentional tort of assault is the apprehension of

5    harmful or offensive contact.  *Irvine*, 2001 WL 967524 at *9 (citing Restatement (Second) of Torts §

6    21 (1965)).  Battery is any willful or unlawful use of force or violence upon another that causes

7    injury.  Cal. Penal Code § 243.  The essence of the intentional tort of battery is the harmful or

8    offensive contact.  *Irvine*, 2001 WL 967524 at *9 (citing Restatement (Second) of Torts § 18

9    (1965)).

10        Where a police officer is the defendant, the plaintiff must prove unreasonable force as an

11    additional element of these torts.  *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998).

12    While *Edson* addressed the tort of battery and did not specifically mention assault, the reasoning

13    used by that court to find that a plaintiff must show unreasonable force when alleging battery against

14    a police officer applies equally to an assault claim.  *Heymann v. California*, 1999 WL 638205 (N.D.

15    Cal. 1999) (plaintiff's claim for assault and battery failed because police officer used reasonable

16    force).  Specifically, the *Edson* court reasoned that the rule requiring proof of unreasonableness

17    accounts for the special situation of police defendants who are charged with acting affirmatively and

18    using force as part of their duties.  *Edson*, 63 Cal. App. 4th at 1273.  The court found that a police

19    officer must have control of the manner and means of making an arrest because the officer must

20    make snap decisions in tense situations.  *Id.*  Further, the rule announced in *Edson* is consistent with

21    the rules regarding burden of proof in 42 U.S.C. § 1983 cases.  *Id.* at 1274. Accordingly, Plaintiff

22    must prove unreasonable force to prevail on his assault and battery claim.

23        In his complaint, Plaintiff contends that Defendants committed assault and battery by man

24    handling him and taking him into custody without legal right.  Plaintiff, however, has not put forth

25    any evidence that Officer White acted with unreasonable force and there is no evidence that

26    Plaintiff's arrest varied from the standard arrest procedure used by police.  Because Plaintiff has

27    failed to demonstrate unreasonable force as required by *Edson*, summary judgment is proper with

28                                         20

1  respect to the assault and battery claim.  Accordingly, the Court hereby GRANTS Defendants'

2  motion as to Plaintiff's assault and battery claims.

3          4.      Intentional infliction of emotional distress

4          The elements of the tort of intentional infliction of emotional distress are: "(1) outrageous

5  conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the

6  probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional

7  distress; and (4) actual and proximate causation of the emotional distress by the defendant's

8  outrageous conduct."  *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883 (1989).  Outrageous

9  conduct must "be so extreme as to exceed all bounds of that usually tolerated in a civilized society."

10  *Id.*  Conduct which exhibits mere rudeness and insensitivity does not rise to the level required for a

11  showing of intentional infliction of emotional distress.  *Schneider v. TRW, Inc.*, 938 F.2d 986, 992

12  (9th Cir. 1991).

13          Plaintiff alleges that Defendants' actions as described in his Complaint were extreme and

14  outrageous and beyond the scope of conduct that should be tolerated by citizens in a democratic and

15  civilized society.  However, Plaintiff has not presented a triable issue of fact with respect to at least

16  the first and second elements of his intentional infliction of emotional distress claim.  Defendants'

17  conduct does not nearly rise to the level of outrageous.  Indeed, the evidence reflects that Defendants

18  were lawfully exercising their discretion to arrest and hold Plaintiff based on Officer White's

19  investigation.  Plaintiff has failed to present any evidence to demonstrate that Defendants' conduct

20  was outrageous.  Moreover, there is no evidence that Defendants intended to cause or recklessly

21  disregarded the probability of causing emotional distress to Plaintiff.  Accordingly, the Court hereby

22  GRANTS Defendants' summary judgment motion with respect to Plaintiff's intentional infliction of

23  emotional distress claim.

24          5.      Negligent infliction of emotional distress/negligence

25          In his Complaint, Plaintiff alleges both negligent infliction of emotional distress and

26  negligence on the part of Defendants.  However, in California, there is no tort for the negligent

27  infliction of emotional distress.  Instead, the regular rules of negligence apply.  *Potter v. Firestone*

28

21

*Tire & Rubber Co.*, 6 Cal. 4th 965, 984-985 (1993).  In order to prevail on his claim for common law negligence, Plaintiff must show that (1) Defendants owed Plaintiff a duty of care, (2) Defendants breached that duty, (3) the breach caused Plaintiff's injury, and (4) Plaintiff suffered damages.  *Spates v. Dameron Hosp. Ass'n.*, 114 Cal. App. 4th 208, 213 (2003).

Here, Plaintiff alleges that Defendants were subject to a duty of care to avoid causing unnecessary physical harm and distress to citizens in their exercise of the police function, and that Defendants' behavior did not comply with that standard of care.  Defendants do not argue that Officer White did not have a duty of care; thus, the question is whether Officer White breached that duty of care.  For the reasons discussed above surrounding Officer White's investigation and arrest of Plaintiff, the Court finds that he did not.

Moreover, even if he did breach a duty, Officer White is immune for his discretionary actions, even if he abused his discretion, under California Government Code Section 820.2, which provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused."  A discretionary act, for the purpose of determining whether a public employee is immune from liability, requires deliberation, decision, and judgment.  *Morgan v. County of Yuba*, 230 Cal. App. 2d 938, 942 (1964).  Here, Officer White was obligated to exercise his discretion after he had observed the apartment complex and confirmed information about the property and Plaintiff's actions.  Therefore, even if he did breach a duty, Officer White's decision to arrest Plaintiff for trespassing was an exercise of discretion and he is immune from liability.  Accordingly, the Court hereby GRANTS Defendants' motion on Plaintiff's negligence claim.

6.   Malicious prosecution

Although not listed as a separate cause of action, Plaintiff vaguely alleges a malicious prosecution claim against Defendants.  DSE Tab A at 3:7-8.  The elements of malicious prosecution under California law are: (1) initiation of criminal prosecution; (2) malicious motivation; and (3) lack of probable cause.  *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987).

In his amended complaint, which was presented to Defendants but not filed with the Court

United States District Court

For the Northern District of California

1  (DSE Tab L), Plaintiff alleges that the City and Officer White failed to dismiss the trespassing

2  charge against him.  However, the decision whether or not to prosecute rests entirely in the

3  prosecutor's discretion.  *United States v. Armstrong,* 517 U.S. 456, 464 (1996) (internal citation

4  omitted).  Regardless, under California law, a police officer may not be held liable for malicious

5  prosecution.  *Asgari v. City of Los Angeles*, 15 Cal. 4th 744, 757 (1997) (citing Cal. Gov't Code §

6  821.6).  Moreover, Officer White's immunity applies to the City through California Government

7  Code Section 815.2(b).  Thus, Defendants are not liable for malicious prosecution and the Court

8  hereby GRANTS Defendants' summary judgment motion on this issue.

9         7.    California Civil Code Section 52.1

10       Plaintiff alleges that Defendants interfered with his exercise and enjoyment of his civil

11  rights, including the right to be free from violence and the threat of violence, through the use of

12  wrongful force, false arrest and imprisonment.  Section 52.1(b) permits an individual whose exercise

13  or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured

14  by the Constitution or laws of California, has been interfered with to prosecute a civil action for

15  damages.  Cal. Civ. Code § 52.1(b).  However, Section 52.1 is limited to threats, intimidation, or

16  coercion that interferes with a constitutional or statutory right.  *Venegas v. County of Los Angeles*,

17  32 Cal. 4th 820, 841 (2004).

18       Plaintiff argues that there is a triable issue of fact whether Officer White interfered with his

19  rights as a tenant, rights to be free from unlawful arrest and false imprisonment, and his rights to due

20  process.  However, as discussed above, Plaintiff has failed to show a constitutional violation at all,

21  let alone actions that constitute threats, intimidation, or coercion on the part of Defendants.  In

22  support of their motion, Defendants cite to *Gruzen v. Henry*, 84 Cal. App. 3d 515 (1978), which the

23  Court finds applicable.

24       In *Gruzen*, the court found a rental agreement with the landlord was void because the

25  landlord had not previously secured the certificate of occupancy required by the City of Pasadena

26  ordinance.  The court noted that the purpose of the ordinance was to insure that property in the City

27  of Pasadena met health and safety requirements of that City's code.  *Id.* at 517.  The court stated that

28

                                                 23

United States District Court

For the Northern District of California

1   "'the fact that the . . . ordinance prescribes a penalty for doing the prohibited act but does not

2   expressly state that contracts entered into in violation of the ordinance are void is immaterial.'"  *Id.*

3   at 518 (quoting *Smith v. Bach*, 183 Cal. 259, 262 (1920)).  Where the statute in question is designed

4   for the protection of the public, a contract in violation of it is void.  *Id.* at 519.

5          Like the ordinance in *Gruzen*, the City of Oakland's ordinance has a manifest purpose to

6   protect the public from substandard housing.  Oakland Mun. Code Chap. 1.08.010.  Thus, at the time

7   of his arrest, Plaintiff did not have a constitutionally protected right to occupy the subject property

8   and there can be no constitutional violation.  Accordingly, the Court hereby GRANTS Defendants'

9   summary judgment motion as to Plaintiff's California Civil Code Section 52.1 claim.

10                                **IV.  CONCLUSION**

11          Based on the foregoing analysis, the Court hereby GRANTS Defendants' Motion for

12   Summary Judgment.

13          **IT IS SO ORDERED.**

14

15   Dated: February 2, 2006                    _____

16                                            MARIA-ELENA JAMES
                                             United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28                                            24